IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEFFERY J. HARRIS, #311449,    *
    *
    Plaintiff,    *
    *
vs.    * CIVIL ACTION NO. 17-00300-CG-B
    *
GROVER SMITH, *et al.*,    *
    *
    Defendants.    *

**REPORT AND RECOMMENDATION**

Plaintiff Jeffrey J. Harris, who is proceeding *pro se* and *in forma pauperis*, filed this § 1983 action while a pretrial detainee at the Escambia County Detention Center.[1] This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Currently pending before this Court is Harris' Motion for Leave to Amend, Joinder and Removal of Parties ("Motion to Amend"). (Doc. 61). After a review of the Motion to Amend, it is recommended that the motion be denied for the reasons set forth herein.

I. **Proceedings**.

On January 27, 2017, Harris initially filed a petition seeking habeas relief under 28 U.S.C. § 2254. See Harris v. Kliener, Case No. 17-00054-CG-N, ECF No. 1. While the habeas

_____

[1] After the commencement of this action, Plaintiff was transferred to the custody of the Alabama Department of Corrections. (See Doc. 19).

petition was pending, Harris filed documents which the Court construed as asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986. Id. at ECF No. 18. The documents were extracted from Case No. 17-00054-CG-N and assigned to the instant case. Because the documents were not on the form required by this Court for § 1983 prisoner actions, Harris was directed to refile on the form required by this Court. (Doc. 3). Harris filed an amended complaint on August 15, 2017. (Doc. 5). Subsequent thereto, Harris sought and was granted permission to amend his complaint. (Docs. 10, 11). On September 5, 2017, Harris filed his second amended complaint, which is the operative pleading in this action. (Doc. 13).

On October 29, 2018, Defendants filed their Answer and Special Report (Docs. 37, 38), which the Court converted into a motion for summary judgment on January 3, 2019. (Doc. 43). Upon conversion, the parties were provided notice, and were given an opportunity to file briefs in support of, or in opposition to, the motion. (Id.). Defendants filed a Supplemental Special Report on February 4, 2019. (Doc. 44). Upon review, the Court, on March 6, 2019, held the summary judgment motion in abeyance and entered a Rule 16(b) Scheduling Order, which established a discovery cut-off date of June 7, 2019. (Doc. 50).

On March 8, 2019, Harris filed his third amended complaint.[2] (Doc. 54). The document was stricken because Harris did not seek leave of Court to amend his complaint in accordance with Rule 15(a) of the Federal Rules of Civil Procedure. (Doc. 57). In addition, the document was not on the form required by the Court for prisoner actions. Subsequent thereto, Harris, on March 29, 2019, filed the instant Motion to Amend (Doc. 61), and sought to add Jane Doe, Dora Nettles, and Escambia County Commissioners ("Commissioners") as Defendants; to remove Ray Farmer and Escambia County Detention Center as Defendants; to add Eighth Amendment claims and additional pages; to amend existing claims and relief in order "to provide plausible wording and factual development upon which relief can be granted." (Id. at 1). According to Harris, he desires to serve all of his existing claims as well as "[Eighth] Amendment claims on Escambia County Commissioners as they had notice of the original complaints through their elected official Grover Smith." (Id.). Harris contends that he named Escambia County Detention Center as a Defendant but actually intended to sue the Commissioners instead, and that Rule 15(c) authorizes "mistake

---

[2] In the third amended complaint, Harris sought to expand the claims to include the denials of freedom of expression, freedom of religion, ineffective assistance of counsel, medical care, reasonable bail, and constitutional conditions of confinement. Harris also sought to add Defendants.

of law" amendments. (Id.). In addition, Harris seeks to "expand" his First Amendment claim to include "religious freedoms," and he argues that his proposed amendments are within the statute of limitations and consistent with the original pleading. (Id. at 2).

Defendants filed a limited opposition to Harris' Motion to Amend, wherein they objected to Harris' motion to the extent it seeks to add new parties and new claims not premised on facts pled in the operative complaint. (Doc. 64). In their opposition, Defendants noted that this action, after being severed from Plaintiff's habeas action, was commenced on April 24, 2017, nearly two years before Harris' latest attempt to yet again amend his complaint. (Id. at 4).

In response, Harris, on May 28, 2019, filed an affidavit in support of his Motion to Amend. (Doc. 73). In his affidavit, Harris proffered reasons for the manner in which he has proceeded in this litigation, namely that he did not understand the law and the Court's orders, he needed the grievances from the jail, which he received only after July 12, 2018, in order to "make current [the] proposed amended complaint with specificity," and he did not have adequate legal assistance and a law library to "effectively" file a § 1983 claim. (Id. at 1-2).

## II. **Applicable Law**.

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of a complaint. See Fed. R. Civ. P. 15. When twenty-one days have passed after the filing of a defendant's answer, Rule 15(a)(2) allows a party to amend its complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)(B) & (a)(2). Although leave to amend is to be "freely give[n] . . . when justice so requires[,]" an amendment will not be allowed where undue delay or prejudice to the opposing party are present, see Carter v. Broward Cnty. Sheriff's Dep't Med. Dep't, 558 F. App'x 919, 923 (11th Cir. 2014) (per curiam),[3] or the amendment would be futile, see Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999).

The correct procedure for amending a complaint is to file a motion for leave to amend with the court. Id. (citing Fed. R. Civ. P. 7(b)(1)). "A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Id. In this case, there is no question that Harris understood the need to request permission before filing an amended complaint, as the docket clearly

---

[3] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority. See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

reflects that he previously requested and was granted permission to amend his complaint in 2017.  (Docs. 10, 11).

Furthermore, in the Motion to Amend, Harris merely conveys in a vague manner his intention to obtain leave to amend the complaint in order to add parties and claims.  (See Doc. 61). Harris does not convey the actual substance of the proposed amended complaint.  "A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."  Long, 181 F.3d at 1279.  The substance of the proposed amendment must be before a court to avoid granting an amendment that would be subject to dismissal, which would be an exercise in futility.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (stating that in ruling on a requested amendment, a court must consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment").  Requiring the production of the proposed amended complaint or its substance is even more important in an in forma pauperis action, where a court is under a duty to screen claims under 28 U.S.C. § 1915(e)(2) and to dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be

granted, or seek monetary damages from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i-iii).

In the instant Motion to Amend, Harris seeks to add Jane Doe, Dora Nettles, and the Commissioners as Defendants; remove Defendants Ray Farmer and Escambia County Detention Center; add Eighth Amendment claims and more pages; "expand" his First Amendment claim; and amend existing claims and the relief sought (that is, by "provid[ing] plausible wording and factual development upon which relief can be granted"). (Doc. 61 at 1-2). However, Harris has not included in his motion a factual description of his proposed new claims or the basis upon which he seeks to assert claims against new Defendants.

In support of his request, Harris argues that with no assistance, his Eighth Amendment claims were served on the wrong party, and that he actually desired to have those claims served "on [the] Escambia County Commissioners [who] had notice of the original complaints through their elected official Grover Smith." (Id. at 1). He maintains that "Rule 15(c) provides for 'mistake of law' amendments[,]" and that when he named Escambia County Detention Center as a party, he actually intended to sue the Commissioners. (Id.). Interestingly, in his affidavit, Harris asserts that he only "became aware that the county commissioners needed to be named as defendant[s] rather than

ECDC after reading Pro se self help manual [at Bullock Correctional Facility]." (Doc. 73 at 1-2). In addition, Harris seeks to "expand" his First Amendment claim "in regards to religious freedoms[,]" which he maintains is consistent with his original pleadings and within the statute of limitations. (Doc. 61 at 2).

The pertinent portion of Rule 15 provides:

(c) Relation Back of Amendments.

   (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

      (A) the law that provides the applicable statute of limitations allows relation back;

      (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

      (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

         (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

         (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

III.  **Application of Law to Facts**.

    A. **Request to Add Escambia County Commissioners as Defendants**.

As a preliminary matter, the Court observes that, contrary to Harris' assertion, Escambia County Detention Center is not a Defendant in this action.  In Harris' second amended complaint, he listed Escambia County Detention Center in the style of the complaint; however, he did not list Escambia County Detention Center in section III of the complaint form, where Defendants are to be listed.  (Doc. 13 at 4-5, 10; see id. at 1 ("D. Defendants. The persons who are listed as defendants in section III of the complaint are deemed by the Court to be the only defendants to his action. . . . The first defendant listed in section III should be the defendant that you list in the style of your case on your complaint form . . . .").

Moreover, the Court's service order expressly identified the parties whom it considered to be Defendants based on the allegations in Harris' second amended complaint.  (See Doc. 25 at 1 n.1 ("Those persons who are listed as Defendants in Section III of the complaint form and are included in the amended complaint are the only persons deemed by this Court to be Defendants in this action.); id. at 2 (listing Defendants)).  The service order also notified Harris that it was his responsibility to "monitor[] this action to make sure that the

person whom Plaintiff wishes to sue has been served [and] [i]f the person has not been served, he/she is not a party to this action." (Id. at 5). Harris' operative complaint does not list Escambia County Detention Center in section III and does not include actions Escambia County Detention Center is alleged to have taken in violation of Harris' rights. Thus, the Court did not list Escambia County Detention Center in its service order as a Defendant that would be served. (See id. at 2).

Not only is Escambia County Detention Center not a Defendant in this action, it is substantively incapable of being a Defendant. In order to have a viable § 1983 action, the entity sued must be capable of being sued. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992). The capacity of a party to be sued is determined "by the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b)(3); Dean, 951 F.2d at 1214.

In Alabama, a county sheriff's department lacks the capacity to be sued. Dean, 951 F.2d at 1215; Frith v. Baldwin Cnty. Sheriff's Office, 2008 U.S. Dist. LEXIS 46635, at *8-13, 2008 WL 2441046, at *3-4 (S.D. Ala. June 16, 2008); Ex Parte Haralson, 853 So. 2d 928, 931 (Ala. 2003); King v. Colbert Cnty., 620 So. 2d 623, 626 (Ala. 1993); White v. Birchfield, 582 So. 2d 1085, 1087 (Ala. 1991). The sheriff, or a jailer who is appointed by the sheriff, "has the legal custody and charge of

the jail in his or her county and all prisoners committed thereto[.]" Ala. Code § 14-6-1 (1975); cf. Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979).

Because the county corrections center/jail is operated by the sheriff's department, which lacks the capacity to be sued, the corrections center/jail likewise lacks the capacity to be sued. Marsden v. Fed. Bureau of Prisons, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (finding that the jail is not an entity amenable to suit); Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit."); Curtis v. Baldwin Cnty. Corr. Ctr., 2009 U.S. Dist. LEXIS 73797, 2009 WL 2596495, at *1 (S.D. Ala. Aug. 20, 2009) (same); Russell v. Mobile Cnty. Sheriff, 2000 U.S. Dist. LEXIS 18051, at *6, 2000 WL 1848470, at *2 (S.D. Ala. Nov. 20, 2000) (same). Inasmuch as an Alabama county corrections center/jail does not have a legal existence separate from the sheriff's department, Escambia County Detention Center is not a proper Defendant to this § 1983 action. Thus, the Commissioners cannot be substituted for Escambia County Detention Center.

As further support for his effort to add the Commissioners as Defendants, Harris argues that "they had notice of the original complaint through their elected official [Sheriff] Grover Smith[,]" who is a Defendant. (Doc. 61 at 1; Doc. 13 at

4).  Harris has offered no factual information from which it can be inferred that the Commissioners had actual notice of this action.  See Shedd v. Wells Fargo Home Mortg., Inc., 2016 U.S. Dist. LEXIS 20943, at *8-10, 2016 WL 707049, at *3 (S.D. Ala. Feb. 22, 2016) (noting that the proper focus of the inquiry is on the notice the prospective defendants had) (citing Krupski v. Costa Crociere, S.p.A., 560 U.S. 538 (2010)).  Such a showing is necessary because a sheriff in Alabama is not a county official but is an officer of the State "when supervising inmates and otherwise operating the county jails."  Turquitt v. Jefferson Cnty., Ala., 137 F.3d 1285, 1289 (11th Cir. 1998), cert. denied, 525 U.S. 874 (1998).  "[T]he sheriff's authority over the jail is totally independent of the [county commission]."  Id. (brackets in original); see Ala. Code § 14-6-1 (1975); King v. Colbert Cnty., 620 So. 2d 623, 625 (Ala. 1993).  And, as an executive officer of the State, "a sheriff is not an employee of a county for the purposes of imposing liability on the county." Turquitt, 137 F.3d at 1288 (quoting Parker v. Amerson, 519 So. 2d 442, 443 (Ala. 1987)).

The sheriff is responsible for the daily operation of the jail and the supervision of inmates, whereas the county is obligated to fund the operation of the jail and to provide facilities to house a jail.  Turquitt, 137 F.3d at 1289.  "The

county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners." Id. at 1289-90 (citing Ala. Code §§ 11-14-10, 11-14-13 (1989)). The duty to maintain a jail relates to the physical plant of the jail and keeping the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." Id. at 1290 (quotation omitted).

The claims asserted by Harris involve the operation of Escambia County Detention Center, as opposed to its funding and physical structure. As described in the Rule 16(b) Scheduling Order (Doc. 50), Harris' claims are based on Escambia County Detention Center's policy regarding mail, including postcards and periodicals; policy/practice of locking down the jail for behavioral issues; law library or lack thereof; and policy/practice of recording inmate phone calls. (Id. at 1).

"A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" Turquitt, 137 F.3d at 1287 (brackets in original) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986)). Harris, however, has not alleged claims connected to the jail's funding, for which the Commissioners may potentially be liable,

and shown that the Commissioners had notice of such claims. Thus, to allow an amended complaint against the Commissioners which does not arise from the jail's funding and of which they do not have notice would be an exercise in futility. Moreover, Harris' alleged mistake in not naming the Commissioners was a mistake in legal judgment, not a mistake in naming the party as permitted by Rule 15(c). See Nobles v. Rural Cmty. Ins. Servs., 303 F. Supp. 2d 1279, 1287 (M.D. Ala. 2004) (Rule 15(c) does not apply "to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged") (quotation omitted), aff'd, 116 F. App'x 253 (11th Cir. 2004).

### B. Request to Expand First Amendment Claims with Regard to "Religious Freedoms."

In the Motion to Amend, Harris suggests that he wants to expand his First Amendment claim to include a religious freedom claim, as such a claim would be consistent with the allegations in his second amended complaint and within the statute of limitations. (Doc. 61 at 2). Harris has not, however, described his religious freedom claim in the Motion to Amend. He merely states that he has one. On the face of his motion, Harris has not stated a claim for a violation of his right to freely exercise his religion. To state a § 1983 claim, a plaintiff must establish a causal connection between a

14

defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). Moreover, the claim must be plausible. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 557 (2007) (a plausible claim contains "[f]actual allegations [that are] enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief'"). Due to the absence of information, Harris has failed to state a claim upon which relief can be granted with regard to a religious freedom claim.

Nonetheless, turning to his second amended complaint to see if a proposed amended complaint would relate back, the Court finds, upon close examination, a fleeting reference to religion in that Harris alleges that as a consequence of the dorm being locked down, "he suffered a loss of privileged visit for Jehovah[']s Witness Bible study[.]" (Doc. 13 at 11). Then, in his declaration attached to the complaint, Harris states that due to the mail policy, he is "limited in [his] ability to seek spiritual guidance [from] clergy[.]" (<u>Id.</u> at 18). These discrete passing references to religion, which are embedded in his complaint and declaration, are not the focus of his second amended complaint. Moreover, these references convey only that

15

Harris was briefly impacted in the exercise of his religion. They do not suggest a complete deprivation of his right to freely exercise his religion, nor has Harris provided any information in his motion which indicates such.[4]

Additionally, Harris' passing references were not sufficient to place the Court or the Defendants on notice of a claim that he was deprived of his religious freedom. In pleading his claims, Harris has the burden of providing fair notice of his claims to Defendants and the Court. In other words, a defendant needs to be able "to discern what the plaintiff is claiming and to frame a responsive pleading." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). And, when a plaintiff gives fair notice of a claim, the court is relieved of "the cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses." Id. (brackets in original) (quotation omitted). Here, Harris' reference to being deprived of a visit for a Jehovah's Witness Bible study is under the heading of "Violation of 5th Amendment [-] punishment of detainees without hearing." (Doc. 13 at 11). Additionally, in his attached declaration, Harris' reference to a religious

---

[4] In the stricken third amended complaint, Harris alleged that he was a practicing Sikh when he entered Escambia County Detention Center, but during his incarceration, he began "to study and practice Jehovah Witness doctrine." (Doc. 54 at 19, 22).

deprivation was among several other deprivations mentioned and are contained in a paragraph concerned with limitations on outgoing mail. (Id. at 18). These embedded references did not provide notice of a First Amendment religious freedom claim. Defendants did not address such a claim in their Special Report as supplemented, nor did the Court identify such a claim in its scheduling order. (Docs. 38, 44, 50).

In considering Harris' Motion to Amend, the Court finds that it is due to be denied because, while Harris' second amended complaint and declaration contain two passing references to religion, they fall far short of placing the Court and Defendants on notice of a religious freedom claim. And, Harris' Motion to Amend does not contain sufficient factual allegations to enable the Court to determine whether a religious freedom claim would be futile. Before the Court may allow an amended complaint under Rule 15, it must find that the amended complaint is not futile. Foman, 371 U.S. at 182. Assuming the substance of Harris' proposed amended complaint is that which is contained in his motion to amend, the amended complaint will be futile because it does not show on its face a violation of Harris' religious freedoms. See Zatler, 802 F.2d at 401. Moreover, due to the absence of facts describing a specific claim, a plausible claim is not presented. See Twombly, 550 U.S. at 555, 557.

**C. Undue Delay – An Alternate Ground for Denial of the Motion to Amend.**

Defendants point out that Harris filed his Motion to Amend two years after this action was commenced, after Defendants filed a motion for summary judgment, and after the entry of the scheduling order setting the limited scope of discovery. (Doc. 64 at 4). They contend that Harris has had "ample opportunity to amend his complaint" and that allowing him to amend would unduly prejudice "the Defendants who have diligently investigated and defended against the pending claims." (Id.).

Defendants further contend that Harris has not explained "why he waited two years from the commencement of this action to attempt to bring Dora Nettles and Jane Doe into this lawsuit, which ha[d] been actively defended against now for over a year." (Doc. 64 at 4-5). To add new Defendants, Defendants maintain, will unduly delay the proceedings, thereby increasing the burdens of time and expense to Defendants, which are already significant. (Id. at 5). Harris counters that the delay resulted from his lack of legal knowledge, absence of a law library, and unavailability of copies of grievances and of a nurse's name. (Doc. 73).

After considering the parties' arguments, the Court finds that Harris had ample opportunity to amend his complaint and has offered no persuasive explanation to excuse the nearly two-year

delay.  See Barrett v. Indep. Order of Foresters, 625 F.2d 73, 75 (5th Cir. 1980)[5] (affirming the denial of a motion to amend filed almost ten months after the original complaint because it sought to add several new parties and counts which could have been raised initially); Tampa Bay Water v. HDR Engineering, Inc., 731 F.3d 1171, 1186 (11th Cir. 2013) (affirming denial of motion to amend where many of the facts supporting the new claims were known before the initial complaint was filed and the amendment would have resulted in the defendant needing to investigate and prepare to defend against new claims, which would have required additional discovery and further delayed the trial), overruled on other grounds by CSX Transportation, Inc. v. Gen. Mills, Inc., 846 F.3d 1333, 1340 (11th Cir. 2017).

To allow an amendment asserting new claims and add new Defendants at this stage would unjustifiably delay the resolution of this action and work a prejudice on Defendants who have already spent considerable time and expense preparing responses to Plaintiff's claims, which are now coming toward their conclusion.  See Stein v. Disciplinary Bd. of the Supreme Court of N.M., 2006 U.S. Dist. LEXIS 95378, at *2-3, 2006 WL 4079022, at *1 (D.N.M. May 31, 2006) (a motion for leave to

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down before October 1, 1981.

amend should not be used to circumvent summary judgment or as a tool to thwart the speedy and efficient resolution of the case); Nolin v. Douglas Cnty., 903 F.2d 1546, 1551 (11th Cir. 1990) (because granting the motion to amend would re-open the pretrial process and delay the trial, it was properly denied inasmuch as there had been sufficient opportunity to request one), rev'd on other grounds by McKinney v. Pate, 20 F.3d 1550, 1558 (11th Cir. 1994); Tampa Bay Water, 731 F.3d at 1186 (noting in affirming district court's denial of motion to amend that prejudice "is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery") (quotation omitted); Lavender v. Kearney, 206 F. App'x 860, 865 (11th Cir. 2006) (per curiam) (district court did not abuse its discretion in denying the amendment as the claim against the new defendant involved a different set of facts, which would have unduly prejudiced the existing defendant, and the claim would have been futile). Accordingly, Harris' Motion to Amend (Doc. 61) is due to be denied.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file

specific written objections with the Clerk of this Court. See 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **30th** day of **August, 2019**.

      **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**